KING, P.J.,
for the court.
¶ 1. This is an appeal from a decision of the Chancery Court of Hinds County, Mississippi, which partially partitioned family real estate. Willie Mobley aggrieved by this partial partition has appealed that decision. On appeal, he raises the following issues, which we cite verbatim:
I. The chancellor refused to partite in kind the entire property. Instead, she chose to less and except therefrom, one and one-fourth of an acre of land, and the home that was situated on it. Is there an absolute right to partition jointly owned property?
II. The chancellor placed nine (9) restrictions on the use of the “home place.” The relief was not sought in the Petition for Partition in Kind. The chancellor also ordered that the homeplace remain vested in Harold, Marcel, and Willie. This relief was not sought or prayed for in the Petition for Partition in Kind. This issue was not even tried. There is nothing in the record to show that these restrictions were ever mentioned in the pleadings, mentioned in the exhibits introduced into evidence, or referred to by any testimony of any witness who testified. Did the lower court have authority to grant relief not prayed for?
¶ 2. This Court finds merit in Issue I, and therefore reverses and remands this action.
FACTS
¶ 3. Harold Benton Morley, Marcelled Thompkins Harper, Willie Sherwood Morley, Edna M. Therrell, and James Edward Morley, siblings, each owned an undivided one-fifth interest in real property inherited from their mother, Mary Edna P. Morley. James Morley conveyed to his siblings the fee simple title to his one-fifth interest in this property.
¶ 4. On May 4, 2000, Harold Benton Morley and Marcelled Thompkins Harper filed an action in the Chancery Court of Hinds County, against Willie Sherwood Morley and Edna M. Therrell, seeking to have the family estate partited in kind. Alternatively, Harold Morley requested that if partition in kind of the property was not feasible, that partition be achieved by sale of the property. He requested that should a sale be decreed, it first be offered to the co-tenants, prior to any effort at public sale.
¶ 5. On June 16, 2000, Willie Morley answered the complaint filed by his siblings and agreed that partition was appropriate. He requested partition in kind if possible, and if not possible, also requested that the property be sold. Willie Morley specifically requested that he be granted the tract containing the ancestral home.
¶ 6. In a trial before the chancellor on September 19, 2000, the parties entered into a signed agreement that the property in dispute should be divided into three tracts as follows:
Tract 1:
Parcel 4967-883 Duke Road. All W % SE 1/4 SW 1/4 W of Buck Williams Road & *716 SW 1/4 SW 1/4 lessl AC to Colored Church SEC 10 T13 R5E. Total acres 57.50.
Tract 2:
Parcel 4967-943 Buck Williams Road. NW 1/4 NE 1/4 SEC 15 T13 R5E N & W of Mudd Creek & NE 1/4 NW 1/4 N & E of Buck Williams Rd less 3 AC to church in N lk N & SEC 15 T13 R5E. Total acres 26.79 Tract 3:
Parcel 4967-942 Buck Williams Road. 51.6 AC S l NE 1/4 S of Mud Creek Less 2 AC S/S Williams RD to Kitchens SEC 15 T13 R5E. Total acres 46.00. That portion of description pertaining to this property in said deed was as follows, to-wit:
. and all that part of the North East Quarter of Section 15, that lies South of Mud Creek, containing 51.60 acres more or less.and being all in Section 15 Township 13 North Range 5 East.
Parcel 4967-951 Buck Williams Road. 2 AC NW COR that PT NE 1/4 SE 1/4 N of Road SEC 15 T13 R5E. Total acres 2.0.
Parcel 4967-935 Buck Williams Road, 22 AC W/S SW 1/4 N/W 14 SEC 14 T13 R5E. Total acres 22.00.
¶ 7. As part of the agreement of September 19, 2000, the parties agreed to jointly employ a surveyor to provide them with an accurate metes and bounds description of each tract. The agreement provided that any disparity in the estate awarded to any of the siblings be balanced by an appropriate cash payment from the other siblings. One sibling, Therrell, had elected not to share in the partition in kind, opting instead, to receive her portion as cash.
¶ 8. The chancellor then proceeded to receive testimony to determine the division of the real property between the siblings. On April 2, 2001, the chancellor entered her final order of partition.
¶ 9. The chancery court awarded Tract 1 to Harold Morley, Tract 2 to Harper, and Tract 3 to Willie Morley. The chancery court further ordered that:
[Harold] Morley shall pay $9,062.50 to [Harper] for her interest in the property which is the subject of this action and he shall pay $15,312.50 to [Therrell] for her interest in said property. [Harold] Morley shall not pay [Willie] Morley any consideration for his interest in that [Willie] Morley is receiving property of the same value as [Harold] Morley. Further, [Willie] Morley shall $9,062.50 to Harper for her interest in said property and he shall pay $15,312.50 to Ther-rell for her interest in said property. [Willie] Morley shall not pay [Harold] Morley any consideration for his interest in that [Harold] Morley is receiving property of the same value as [Willie] Morley.
¶ 10. The ancestral home was included within the surveyor’s description of Tract 1.However, the chancellor, noting the affection of each of the parties for the home place, excluded from Tract I one-quarter of an acre upon which the ancestral home was located. She decreed that this one-quarter acre continue to be held by Harold Morley, Harper and Willie Morley as tenants in common, with each being vested with an undivided one-third interest.
¶ 11. The chancellor decreed that each of the three would have equal access to visitation of the ancestral house, and specifically prohibited the following:
1. Keeping any animals whether domestic or wild on the property; unless with vested owner.
2. Feeding animals whether domestic or wild or leaving any food or any other substance which could be eaten by an animal whether domestic or wild on or near the property;
3. Allowing anyone to visit the property unless accompanied by one of the *717 vested title holders; or family members.
4. Allowing more than three persons not related to the accompanying vested title holder to visit property.
5. Leaving ANY remains of animals of any kind on or near the property-this prohibition includes prohibiting leaving ANY animal remains in any kind of container or garbage can which is left on or near the property-stated simply it is prohibited for any animal remains to be on or near the property at ANY TIME;
6. Leaving automobiles or tractors or equipment or trailers or any other times on the property—the property is not to be use as a storage facility;
7. Leaving items of personalty inside the ancestral home that do not belong to all vested title owners. This is intended to prevent any one co-tenant from using the ancestral home as a storage facility. This includes but is not limited to hunting equipment and clothes and all other furniture not owned by all co-tenants;
8. Driving across the lawn of the property. The driveway which includes an easement for ingress and egress must be used by all vehicles; and
9. Changing or altering the ancestral home or property without the written consent of all co-tenants.
Discussion
The chancellor refused to partite in kind the entire property. Instead, she chose to less and except therefrom, one and one-fourth of an acre of land, and the home that was situated on it. Is there an absolute right to partition jointly owned property?
¶ 12. Pursuant to Miss.Code Ann. Section 11-21-3 (1972), the owner of an undivided fee simple interest in real estate, which is not homestead property, has an absolute right to have his portion separated from the whole. Cheeks v. Herrington, 523 So.2d 1033, 1035 (Miss.1988); Thornhill v. Chapman, 748 So.2d 819 (¶ 16) (Miss.Ct.App.1999). The real estate, which is the subject of this action, was not homestead property. Therefore, each of the owners had an absolute right to have the entirety of his undivided interest set aside separate and apart from that of his co-tenants.
¶ 13. The court may effect a partition by equal in kind division of the property, or by a sale of the property and division of the proceeds. Where feasible, the preferred method of partition is in kind. Blair v. Blair, 601 So.2d 848, 850 (Miss.1992).
¶ 14. The chancellor’s decision to partite or not partite in kind is reviewable under an abuse of discretion standard. McNeil v. Hester, 753 So.2d 1057, 1063 (¶ 21) (Miss.2000).
¶ 15. In the present ease, the real property was clearly subject to partition in kind. Indeed, the parties had agreed upon the units into which the real property should have been divided. What then remained for the chancellor to determine was (1) whether the partition proposed by the parties was a fair one and (2) who would receive which tract.
¶ 16. While the chancellor accepted the tracts agreed upon by the parties, she excluded from the partition a quarter acre, which contained the family home. The reason stated by the chancellor was this exclusion was in recognition of each party’s affection for the home place, and “to insure adequate opportunity for each *718 to return and visit the home place.” Mere sentimental attachment does not render property incapable of partition in kind, nor does it take precedence over the right of a cotenant to have his share set aside. Blackmon v. Blackmon, 350 So.2d 44, 46 (Miss.1977).
¶ 17. This Court holds that where the feasibility of a full in kind partition was shown, the chancellor abused her discretion in decreeing only a partial partition.
¶ 18. Accordingly, we reverse and remand this case and direct the chancellor to fully partite the subject property.
¶ 19. THE JUDGMENT OF THE CHANCERY COURT OF HINDS COUNTY IS REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEES.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.